UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

ROBERT EUGENE KREGEAR,

        Petitioner,

v.                                            Case No. 2:11-cv-67

                                            HON. ROBERT HOLMES BELL

GREGG MCQUIGGIN,

        Respondent.

_____/

## REPORT AND RECOMMENDATION

        Petitioner Robert Eugene Kregear filed this petition for writ of habeas corpus challenging his jury conviction for operating or maintaining a laboratory involving hazardous waste, operating or maintaining a laboratory used to manufacture a controlled substance, maintaining a drug house, and possession of methamphetamine. Petitioner was sentenced as a fourth habitual offender to terms of imprisonment that range from 10 years to 22 years. The respondent has filed an answer and has complied with Rule 5 of the Rules Governing Section 2254 Cases in the United States District Courts. The parties have briefed the issues and the matter is now ready for decision.

        The petition asserts that:

        I. Trial and appellate counsel violated petitioner's Sixth Amendment rights by failing to move to suppress evidence seized from an illegal search warrant that violated petitioner's Fourth and Fourteenth Amendment rights.

        II. Double Jeopardy was violated when petitioner was convicted and sentenced for operating/maintaining a lab involving hazardous waste in violation of MCL 333.7401(C)(2)(C) and also for operating/maintaining a lab contrary to MCL 333.7401(C)(2)(A).

III.  The trial court committed reversible error when it failed to enforce the rules of discovery violating petitioner's Sixth and Fourteenth Amendment rights.

IV.  Petitioner was denied due process of law and a fair trial by repeated acts of prosecutorial misconduct.

V.  Petitioner was denied his constitutional right to a fair trial due to the cumulative effect of the errors that violated petitioner's Fifth and Fourteenth Amendment rights.

VI.  Petitioner was denied his Sixth and Fourteenth Amendment rights when counsel failed to object to prosecutorial misconduct.

VII.  Petitioner was denied ineffective assistance of appellate counsel when counsel failed to raise obvious and significant issues on appeal.

VIII. Petitioner was denied Sixth and Fourteenth Amendment rights when the court, prosecutor, officers and court reporter presented false evidence and testimony and edited the written transcripts provided for petitioner's appeal.

In April of 1996, the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) became effective.  Because this petition was filed after the effective date of the AEDPA, this Court must follow the standard of review established in that statute.  Pursuant to the AEDPA, an application for writ of habeas corpus on behalf of a person who is incarcerated pursuant to a state conviction cannot be granted with respect to any claim that was adjudicated on the merits in state court unless the adjudication:  "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding."  28 U.S.C. § 2254(d).

The AEDPA limits the source of law to cases decided by the United States Supreme Court.  28 U.S.C. § 2254(d).  This provision marks a "significant change" and prevents the district court from looking to lower federal court decisions in determining whether the state decision is

contrary to, or an unreasonable application of, clearly established federal law. *Herbert v. Billy*, 160 F.3d 1131, 1134 (6th Cir. 1998). To justify a grant of habeas corpus relief under this provision of the AEDPA, a federal court must find a violation of law "clearly established" by holdings of the Supreme Court, as opposed to its dicta, as of the time of the relevant state court decision. *Williams v. Taylor*, 529 U.S. 362, 412 (2000). Recently, the Supreme Court held that a decision of the state court is "contrary to" such clearly established federal law "if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts." *Id.* A state court decision will be deemed an "unreasonable application" of clearly established federal law "if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* A federal habeas court may not find a state adjudication to be "unreasonable" "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 412. Rather, the application must also be "unreasonable." *Id.* Further, the habeas court should not transform the inquiry into a subjective one by inquiring whether all reasonable jurists would agree that the application by the state court was unreasonable. *Id.* at 410 (disavowing *Drinkard v. Johnson*, 97 F.3d 751, 769 (5th Cir. 1996)). Rather, the issue is whether the state court's application of clearly established federal law is "objectively unreasonable." *Williams*, 529 U.S. at 409.

   The AEDPA requires heightened respect for state factual findings. *Herbert v. Billy,* 160 F.3d 1131, 1134 (6th Cir. 1998). The habeas corpus statute has long provided that the factual findings of the state courts, made after a hearing, are entitled to a presumption of correctness. This presumption has always been accorded to findings of state appellate courts, as well as the trial court.

*See Sumner v. Mata*, 449 U.S. 539, 546 (1981); *Smith v. Jago*, 888 F.2d 399, 407 n.4 (6th Cir. 1989), *cert. denied*, 495 U.S. 961 (1990). Under the AEDPA, a determination of a factual issue made by a state court is presumed to be correct. The petitioner has the burden of rebutting the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *see also Warren v. Smith*, 161 F.3d 358, 360-61 (6th Cir. 1998), *cert. denied*, 527 U.S. 1040 (1999).

Petitioner asserts numerous instances of prosecutorial misconduct. On direct appeal petitioner's prosecutorial misconduct claims were rejected by the court. Misconduct by a prosecutor can rise to the level of a due process violation. *Lundy v. Campbell*, 888 F.2d 467, 474 (6th Cir. 1989). However, before habeas corpus relief becomes available, the misconduct must be so egregious as to deny petitioner a fundamentally fair trial. *Serra v. Michigan Dep't of Corrections*, 4 F.3d 1348, 1355 (6th Cir.1993). The habeas court must consider the extent to which the claimed misconduct tended to mislead the jury or prejudice the petitioner, whether it was isolated or extensive, and whether the claimed misconduct was deliberate or accidental. *See United States v. Young*, 470 U.S. 1, 11-12 (1985). In addition, the court may view any misconduct in light of the strength of the competent proofs tending to establish guilt. *See Angel v. Overburg*, 682 F.2d 605, 608 (6th Cir. 1982) (*en banc*). "When a petitioner makes a claim of prosecutorial misconduct, 'the touchstone of due process analysis ... is the fairness of the trial, not the culpability of the prosecutor.'" *Serra*, 4 F.3d at 1355 (quoting *Smith v. Phillips*, 455 U.S. 209, 219 (1982)).

The Michigan Court of Appeals stated:

> Defendant argues that the prosecutor shifted the burden of proof to defendant during his rebuttal argument by stating that defendant could have conducted his own fingerprint testing to show that defendant's fingerprints were not on the physical evidence. A comment on a defendant's failure to testify or present evidence is improper if it attempts to shift the burden of proof. *Abraham, supra* at 273. The prosecutor does not shift the burden of proof, however, if the remarks,

taken in context, merely challenge the credibility of a theory advanced by the defendant. *Callon, supra* at 331.

Throughout trial, defendant emphasized that the police did not conduct any fingerprint testing and therefore argued that there was no direct evidence linking him to the crimes. Defense counsel argued in closing that the absence of any fingerprint evidence pointed to defendant's innocence, and theorized that the police did not take fingerprints because doing so would have revealed an absence of defendant's fingerprints. Defense counsel suggested that defendant's fingerprints must not have been on the seized items, and he cross-examined several police witnesses regarding their failure to test the evidence for fingerprints. In light of this defense strategy, the prosecutor's argument that defendant could have performed his own fingerprint testing did not improperly shift the burden of proof.

Defendant further argues that the prosecutor denigrated defense counsel by accusing him of throwing out 43 "red herrings," an apparent reference to the number of times that defense counsel raised the issue of fingerprints in his closing argument. A prosecutor may not suggest that defense counsel is intentionally trying to mislead the jury. *People v Watson*, 245 Mich App 572, 592; 629 NW2d 411 (2001). If a comment is directly responsive to a particular defense argument, however, it is not improper. *Id*. at 593. In Watson, this Court concluded that a prosecutor's reference to "red herrings" was not improper because it was made in response to defense counsel's closing argument, emphasizing alleged discrepancies between various witness accounts. *Id*. at 592-593. Therefore, it was not improper for the prosecutor to respond "by emphasizing the truth of the big picture." *Id*. at 593.

The prosecutor's remarks in this case were similarly responsive to defense counsel's closing argument. The "red herring" reference was directed to defense counsel's argument regarding fingerprints. The prosecutor was attempting to dissuade the jury from focusing on a single issue, not launching a personal attack on defense counsel. We discern nothing improper in these remarks.

Defendant also argues that the prosecutor improperly vouched for a key witness, who was testifying with the understanding that if she testified truthfully, the prosecutor would give her a more favorable recommendation at her upcoming sentencing. The prosecutor stated,

> That's all she's getting out of this; a hope that the
> state through me based on her telling the truth as

you've heard it, will get a positive recommendation about her minimum sentence. Doesn't affect the maximum sentence which is set by law, but only about her minimum sentence. And I think it's very important that you think about that and not just, oh, she made a deal with the state and she's here lying; that's not the case. That's not the case, and you'll get an instruction on exactly what is happening.

A prosecutor may not vouch for the credibility of a witness on the basis of special knowledge, otherwise unavailable to the jury, *People v Bahoda*, 448 Mich 261, 276; 531 NW2d 659 (1995), but may argue that, on the basis of the evidence, a witness is worthy or unworthy of belief, *People v Launsburry*, 217 Mich App 358, 361; 551 NW2d 460 (1996). Reference to a plea agreement warrants reversal only if it is used to suggest that the prosecutor has some special knowledge not known to the jury concerning the witness's truthfulness. *Bahoda, supra* at 276.

The challenged remarks by the prosecutor did not convey any special knowledge regarding her truthfulness. The prosecutor explained that the witness had already been convicted, and the only benefit she could receive was a more favorable sentencing recommendation from the prosecutor. The prosecutor was apparently trying to distinguish the arrangement from a plea agreement and point out that she had less to gain, and therefore was less likely to lie. A prosecutor may comment on the credibility of his own witness during closing argument and argue from the facts that the witness has no reason to lie. *People v Thomas*, 260 Mich App 450, 455; 678 NW2d 631 (2004). Furthermore, the prosecutor's agreement with the witness was first revealed to the jury by defense counsel during cross-examination. The prosecutor's remarks were, therefore, responsive to defense counsel's suggestion that the witness's testimony lacked credibility because of the agreement. There was nothing improper about these remarks.

The Michigan Court of Appeals' decision did not result in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or result in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.

Petitioner asserted some new prosecutorial misconduct claims in his motion for relief from judgment. Respondent asserts that these claims were procedurally defaulted. Since petitioner first raised these issues in his motion for relief from judgment, the trial court denied the motion because petitioner failed to show good cause for not raising these issues in his original appeal.

When a state-law default prevents further state consideration of a federal issue, the federal courts ordinarily are precluded from considering that issue on habeas corpus review. *See Ylst v. Nunnemaker*, 501 U.S. 797, 801 (1991); *Engle v. Isaac*, 456 U.S. 107 (1982). To determine whether a petitioner procedurally defaulted a federal claim in state court, the Court must consider whether: (1) the petitioner failed to comply with an applicable state procedural rule; (2) the state court enforced the rule so as to bar the claim; and (3) the state procedural default is an "independent and adequate" state ground properly foreclosing federal habeas review of the federal constitutional claim. *See Hicks v. Straub,* 377 F.3d 538, 551 (6th Cir. 2004); *accord Lancaster v. Adams*, 324 F.3d 423, 436-37 (6th Cir. 2003); *Greer v. Mitchell*, 264 F.3d 663, 672 (6th Cir. 2001); *Buell v. Mitchell*, 274 F.3d 337, 348 (6th Cir. 2001). In determining whether a state procedural rule was applied to bar a claim, a reviewing court looks to the last reasoned state-court decision disposing of the claim. *See Ylst*, 501 U.S. at 803; *Guilmette v. Howes*, 624 F.3d 286, 291 (6th Cir. 2010).

If a petitioner procedurally defaulted his federal claim in state court, the petitioner must demonstrate either (1) cause for his failure to comply with the state procedural rule and actual prejudice flowing from the violation of federal law alleged in his claim, or (2) that a lack of federal habeas review of the claim will result in a fundamental miscarriage of justice. *See House v. Bell*, 547 U.S. 518, 536 (2006); *Murray v. Carrier*, 477 U.S. 478, 495 (1986); *Hicks*, 377 F.3d at 551-52. The miscarriage-of-justice exception only can be met in an "extraordinary" case where a prisoner asserts a claim of actual innocence based upon new reliable evidence. *House*, 547 U.S. at 536. A habeas

petitioner asserting a claim of actual innocence must establish that, in light of new evidence, it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt. *Id.* (citing *Schlup v. Delo*, 513 U.S. 298, 327 (1995)).

Petitioner's claims of prosecutorial error involve statements made during closing argument, questions that petitioner argues were improper because they implied evidence that was not in the record or were based on twisted facts that contradicted the evidence, or were based on contradiction of the evidence as presented by defense counsel. Petitioner has failed to establish prosecutorial error on the record. Statements made by attorneys, including the prosecutor during closing argument, are not evidence but rather simply attorney argument. "This court has been reluctant to grant habeas petitions based on improper prosecutorial statements at closing argument." *Wilson v. Mitchell*, 250 F.3d 388, 398 (6th Cir. May 14, 2001). Moreover, questions presented during the trial are not evidence, but simply questions designed to draw out evidence from witnesses. It is the witnesses' testimony that is the important consideration for the jury not the prosecutor's questions. Counsel had the opportunity to object to inappropriate questions or comments on the evidence. Petitioner has failed to show that he did not receive a fair trial based upon the prosecutor's comments or witness questioning. Moreover, in the opinion of the undersigned, petitioner has failed to overcome his procedural default of each instance of alleged prosecutorial misconduct not raised on direct appeal.

Petitioner argues that he was denied exculpatory evidence in violation of *Brady v. Maryland*, 373 U.S. 83 (1963). It is well settled that, under *Brady v. Maryland*, the prosecution must disclose any evidence it has in its possession or of which it is aware which is both favorable to the accused and material to guilt or punishment. A defendant does not have to make a specific request for *Brady* evidence before the government has an obligation to disclose favorable evidence.

*See United States v. Agurs*, 427 U.S. 97 (1976). As the Court stated in *Kyles v. Whitley*, 514 U.S. 419 (1995), the obligation to disclose exculpatory evidence is required even absent a defense request when suppression of the evidence would be "of sufficient significance to result in the denial of the defendant's right to a fair trial." *Id.* at 1565, citing *Agars* at 108.

In *Brady*, the petitioner and a companion, Bobit, were found guilty of murder and sentenced to death. At his trial, petitioner maintained that although he participated in the crime he did not commit the murder. Bobit had earlier confessed to the murder. However, the actual confession was withheld from defense counsel despite defense counsel's request to examine Bobit's extrajudicial statements. The Supreme Court affirmed the Court of Appeals' order granting a new trial on the issue of punishment. The court stated:

> We now hold that the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution.

*Id.* at 87. The Court defined materiality in *United States v. Bagley*, 473 U.S. 667 (1985):

> The evidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different.

*Id.* at 682. *See also United States v. Bencs*, 28 F.3d 555 (6th Cir 1994); *United States v. Mullins*, 22 F.3d 1365 (6th Cir. 1994). "A 'reasonable probability' of a different result is accordingly shown when the government's evidentiary suppression 'undermines confidence in the outcome of the trial.'" *Kyles* at 1566, citing *Bagley* at 678.

In this case, petitioner has asserted that some photos, TNT report, photo exhibits and a page of a report were not disclosed until trial. The Attorney General's response indicates that each of the reports were given to defense counsel contrary to petitioner's claim. Petitioner never raised

these issues at trial and first presented them in his motion for relief from judgment. The trial court denied that motion because petitioner could have presented these issues on direct appeal and did not show good cause for his failure to appeal these issues. In the opinion of the undersigned, petitioner clearly defaulted these claims and has failed to show good cause and prejudice for his procedural default.

Moreover, petitioner has failed to show that he in fact was denied these materials for trial purposes. The prosecutor does not have to disclose exculpatory evidence which is otherwise available to the defense. *United States v. Clark*, 928 F.2d 733 (6th Cir. 1991) ("No *Brady* violation exists where a defendant 'knew or should have known the essential facts permitting him to take advantage of any exculpatory information,' *United States v. Grossman*, 843 F.2d 78, 85 (2d Cir. 1988), *cert. denied*, 488 U.S. 1040, 109 S. Ct. 864, 102 L.Ed.2d 988 (1989), or where the evidence is available to defendant from another source.")

Petitioner claims that he received ineffective assistance of trial and appellate counsel. In order to prevail on a claim of ineffective assistance of counsel, petitioner must show that counsel's errors were so serious that he was not functioning as counsel guaranteed by the Sixth Amendment, and that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Wong v. Money*, 142 F.3d 313, 319 (6th Cir. 1998); *Bruner v. Perini*, 875 F.2d 531, 535 (6th Cir.), *cert. denied*, 493 U.S. 938, 110 S. Ct. 334 (1989) (citing *Strickland v. Washington*, 466 U.S. 668, 688-96, 104 S. Ct. 2052, 2065, 69, 80 L. Ed. 2d 647 (1984)).

There has been ineffective assistance of counsel where an attorney's performance is so deficient as to prejudice the defense and render the trial unfair and the result unreliable. *Wong*, 142 F.3d at 319; *Austin v. Bell*, 126 F.3d 843, 847 (6th Cir. 1997), *cert. denied*, 118 S. Ct. 1547

(1998). Even if a court determines that counsel's performance was outside the wide range of professionally competent assistance, the petitioner is not entitled to relief if his counsel's error had no effect on the judgment. *Tucker v. Prelesnik*, 181 F.3d 747, 754 (6th Cir. 1999). Rather, a petitioner must show that the probability that the outcome of the case would have been different but for counsel's unprofessional errors is sufficient to undermine confidence in the result. *Wong*, 142 F.3d at 319; *Austin*, 126 F.2d at 848. "The performance and prejudice components of the *Strickland* test are mixed questions of law and fact." *Austin*, 126 F.2d at 848.

The court's review of defense counsel's performance is highly deferential, and defense counsel is presumed to have rendered adequate assistance by exercising reasonable professional judgment and sound trial strategy. *Wong*, 142 F.3d at 319; *Austin*, 126 F.3d at 848. The petitioner must overcome the presumption that, under the circumstances, the challenged actions might be considered sound trial strategy. *Strickland*, 466 U.S. at 689; *Tucker v. Prelesnik*, 181 F.3d 747, 754 (6th Cir. 1999).

The trial court rejecting these claims explaining:

The issue raised by defendant that his Sixth Amendment rights were violated by ineffective assistance of counsel as it relates to prosecutorial misconduct can be dealt with easily. The Court of Appeals thoroughly reviewed the conduct of the prosecutor in the course of the trial and determined that no such prejudice occurred to the defendant. In spite of counsel's objections or lack of objections, no prejudice occurred to the defendant, and, therefore, no relief should be afforded to the defendant on that ground. *People v Solmonson*, 261 Mich App 675, 683 NW2d 761 (2004).

The defendant has further asserted in issue one that ineffective assistance occurred as a result of both trial counsel and appellate counsel failing to move to suppress evidence obtained from the execution of an illegal search warrant. The Court has reviewed the arguments of the defendant regarding the defects in the search warrant and the execution thereof. Although it is clear that the good cause requirement of MCR 6.500(D)(3)(a) may be shown by a showing of

ineffective assistance of counsel, the further analysis must be made of the actual prejudice from the alleged irregularities in order to obtain relief as required by MCR 6.500(D)(3)(b). *People v Reed*, 449 Mich 375, 535 NW2d 495 (1995). Here the Court is convinced that the failure to raise the issue regarding the propriety of the search warrant was not likely to cause any actual prejudice. Although the issue could have been raised both by trial counsel and by appellate counsel, the result would have been the same with the Court finding that the search was not a violation of the defendant's Fourth Amendment rights.

Petitioner's claims regarding his trial counsel's failure to object to prosecutorial misconduct are without merit. Similarly, petitioner's assertion that counsel was ineffective for not challenging the search warrant has no basis in law. Petitioner claims that the police searched his residence and his rental residence using a search warrant that was only for one residence. Respondent has asserted that only petitioner's residence was searched. Petitioner cannot show that constitutional error resulted from his attorney's failure to challenge this issue prior to trial or on appeal. Similarly, petitioner's claim that appellate counsel erred by not raising the claims asserted in this petition is without merit.[1] In the opinion of the undersigned, the Michigan court's decision did not result in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or result in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.

---

[1]The trial court found that appellate counsel violated MAACS standards two and seven which are Michigan Appellate Assigned Counsel System standards which involve personal visits and communication prior to the filing of an appeal. The trial court found that petitioner was not prejudiced by these violations. Moreover, for purposes of this habeas action, petitioner cannot show that a violation of MAACS standards constitutes ineffective assistance of appellate counsel without a showing of some violation of a federal or constitutional right.

Petitioner makes unsupported and unsubstantiated claims that the trial transcripts were altered to deny him the opportunity to succeed on appeal. Petitioner has presented no basis for the court to make such a conclusion. Similarly, petitioner's claim of cumulative error that requires reversal of his convictions is a claim without any merit in a habeas proceeding. Petitioner's cumulative error claim is unsupported.

Petitioner claims a double jeopardy violation because he was convicted of operating/maintaining a laboratory involving hazardous waste under MCL § 333.7401c(2)(c) and the similar offense of operating/maintaining a laboratory used to manufacture a controlled substance in violation of MCL § 333.7401c(2)(a). Petitioner was sentenced concurrently on these counts to 13 to 22 years. The respondent concedes this is a double jeopardy violation based upon *People v. Meshell*, 265 Mich. App. 616, 633; 696 N.W.2d 754 (2005), and that petitioner should have only been convicted of one of the two charges. Nevertheless, respondent argues that the concurrent sentence doctrine is a basis for denying petitioner relief.

Under the "concurrent sentencing doctrine," a "court may decline to hear a substantive challenge to a conviction when the sentence on the challenged conviction is being served concurrently with an equal or longer sentence on a valid conviction." *Dale v. Haeberlin,* 878 F.2d 930, 935 n. 3 (6th Cir.1989); *see also, United States v. Hughes,* 964 F.2d 536, 541 (6th Cir.1992). The doctrine is a discretionary one, *see Hughes,* 964 F.2d at 541, and courts "are admittedly hesitant to apply this doctrine." *Dale,* 878 F.2d at 935 n. 3; *see also, Winn v. Renico,* 175 Fed. Appx. 728, 732 (6th Cir.2006). The doctrine is applicable only "when there is *no possibility* of adverse 'collateral consequences' if the convictions stand." *Winn,* 175 Fed. Appx. at 732 (emphasis added); *see also, Dale,* 878 F.2d at 935 n. 3; *Wilson v. Straub,* 185 F. Supp.2d 766, 769 (E.D. Mich.2002) (Hood, J.).

It is not clear that there is no possibility of collateral consequences if both convictions stand. Moreover, these two convictions provided the basis for petitioner's maximum sentence. It cannot be determined from the record that the judge sentenced petitioner to a maximum sentence of twenty-two years because he was convicted of both of these crimes. It is possible that petitioner could have received a shorter maximum sentence if he was only convicted on one of the operating/maintaining a laboratory count as opposed to both counts. Moreover, because a court should be hesitant to apply the concurrent sentence doctrine, it is recommended that the court grant the petition on the grounds that convicting petitioner of both operating/maintaining a laboratory involving hazardous waste under MCL § 333.7401c(2)(c) and the offense of operating/maintaining a laboratory used to manufacture a controlled substance in violation of MCL § 333.7401c(2)(a), violated petitioner's double jeopardy rights. Accordingly, it recommended that the court remand this case to the trial court to vacate one of these duplicate convictions and for re-sentencing.

In summary, the undersigned concludes that the petition for habeas corpus be granted in part remanding this case to the trial court to vacate petitioner's conviction for operating/maintaining a laboratory involving hazardous waste under MCL § 333.7401c(2), or the similar offense of operating/maintaining a laboratory used to manufacture a controlled substance in violation of MCL § 333.7401c(2)(a). It is further recommended that the petition be denied on all other claims.

NOTICE TO PARTIES: Objections to this Report and Recommendation must be served on opposing parties and filed with the Clerk of the Court within fourteen (14) days of receipt of this Report and Recommendation. 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b); W.D. Mich. LCivR 72.3(b). Failure to file timely objections constitutes a waiver of any further right to appeal.

*United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). *See also Thomas v. Arn*, 474 U.S. 140 (1985).

/s/ Timothy P. Greeley
TIMOTHY P. GREELEY
UNITED STATES MAGISTRATE JUDGE

Dated: January 17, 2014